UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANCISCO SIERRA,

       Plaintiff,

    v.

PATRICK COVELLO, et al.,

       Defendants.

No.  2:22-cv-0488 TLN KJN P

ORDER AND FINDINGS AND
RECOMMENDATIONS

       Plaintiff is a state prisoner, proceeding pro se and in forma pauperis.  This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.  Plaintiff's third amended complaint is before the court.  As discussed below, the undersigned denies plaintiff's pending motions and recommends that plaintiff's amended pleading be dismissed without leave to amend, and this action be dismissed.

Screening Standards

       The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

////

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

Operative Pleading[1]

Plaintiff completed the first page of his amended pleading on the court's form, identifying only Patrick Covello, Warden of Mule Creek State Prison ("MCSP"), as a defendant. The second page contains another caption, entitled "Request for Appointment of Counsel; Preliminary Relief; Immediate Transfer Expedited!" (ECF No. 29 at 2.) Plaintiff claims that while he was housed in Facility B #9 cell, the conspiracy began.

In 2021, plaintiff was charged with an IEX by Correctional Officer Hurtado, and plaintiff submitted paperwork at MCSP challenging the false rules violation report. Plaintiff claims MCSP has been monitoring plaintiff's movement very closely, forcing C status on plaintiff and

---

[1] This action was filed on March 15, 2022. (ECF No. 1.) Thus, plaintiff must challenge incidents that took place prior to that date because incidents that took place after the filing of this action could not have taken place prior to the date this action was filed.

2

moving someone out of a certain cell 250 to put plaintiff in there.  Plaintiff alleges there is a transmitter on his upper left back tooth where both this court and the facility can hear plaintiff think, which is against the law.  (ECF No. 29 at 3.)  Plaintiff also claims that since June 25, 2023, while housed in administrative segregation, he has been poisoned and "the one [he] can only eat is the state food that's being poisoned by the C/O's," and "see plaintiff's case 2:23-cv-01347 JDP." (ECF No. 29 at 3, 5, 8.)[2]  He has lost weight and gone man down.  Plaintiff alleges prison staff are lacing his food with meth, and he is attempting to obtain a lab test to confirm.  (ECF No. 29 at 5.)  He seeks an immediate transfer away from MCSP because his life is in danger.  (ECF No. 29 at 5.)

Specifically, plaintiff claims he is suing Patrick Covello for not acknowledging CDCR rules and policies appropriately – endangering the whole institution.  (ECF No. 29 at 4:10-14.)  Further, after plaintiff was cited for IEX, Covello "began to really come down on plaintiff" and had "plaintiff's teeth disfigured."  (ECF No. 29 at 8.)  Plaintiff was falsely placed on C-status after plaintiff tried to write the media about the prison staff misconduct.  Covello "maliciously and sadistically operated MCSP in a very unethical manner blatantly targeting [plaintiff]."  (Id.)

Plaintiff alleges he served a declaration with 84+ signatures on C/O A. Jenkins for staff misconduct.  When he was on Facility B, plaintiff filed another one on C/O Brown with 43+ signatures alleging staff misconduct.  Such declarations alleged improper taking of inmates' property, inappropriate search and seizures, verbal degradation, etc.  Plaintiff alleges that Jenkins retaliated by later taking plaintiff's hot pot.  (ECF No. 29 at 4.)  C/O Brown retaliated by issuing plaintiff four inmate write-ups in a six month period.  Warden Covello did nothing in response to plaintiff alerting Covello to such retaliatory acts.  Plaintiff claims he also has litigation against C/O S. Hurtado for a misunderstanding over an alleged IEX.  (ECF No. 29 at 5.)

////

////

---

[2]  Plaintiff is pursuing his claim concerning the poisoning of his food in Sierra v. Spearman, case No. 2:23-cv-1347 JDP (E.D. Cal.).  Plaintiff could not pursue such claims in this action because this action was filed in March of 2022, before the alleged poisoning took place.

As relief, plaintiff seeks money damages and immediate removal from MCSP.  (ECF No. 30.)[3]

Discussion

Initially, the undersigned acknowledges plaintiff's frustration that his prior pleadings have been screened out.  He refers to his successful filings in the Fresno District of this court, noting that those cases were subsequently settled.  However, each complaint filed by an inmate is independent of complaints filed in other actions.  Moreover, this court has repeatedly given plaintiff specific instructions on how he can successfully amend his pleading to state cognizable civil rights claims, yet plaintiff continues to simply provide a recitation of various unrelated incidents he believes violated his rights.  While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 570)  In addition, the court's complaint form provides additional assistance to plaintiff in terms of specifically identifying a constitutional violation and the prison staff who allegedly violated plaintiff's rights.  Despite being ordered to file his third amended complaint on the court's form, plaintiff only used the first page, and again chose to recite a series of unrelated incidents of alleged staff misconduct.

The undersigned granted plaintiff leave to amend specifically as to his retaliation claim:

> The court finds the allegations in plaintiff's second amended complaint fail to state a claim for relief. In an abundance of caution, plaintiff is provided one final opportunity to file a third amended complaint to attempt to state a cognizable retaliation claim.

> If plaintiff chooses to file a third amended complaint, plaintiff shall use the court's civil rights complaint form. Plaintiff shall include only claims arising from the same incident unless the same defendant is involved in multiple incidents. Plaintiff must include facts supporting each element of the retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2)

---

[3]  Plaintiff inadvertently omitted his request for relief and filed it separately on August 17, 2023. (ECF No. 30.)

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68.

(ECF No. 27 at 10.)  In addition to discussing unrelated incidents involving other prison staff, plaintiff failed to provide specific facts as to his re-alleged retaliation claims against Brown and Jenkins, aside from the fact he failed to name either officer as a defendant in his amended pleading.  Plaintiff was instructed to provide specific facts as to each so that the court could determine whether or not plaintiff stated a cognizable retaliation claim.  (ECF No. 27 at 5-6.) Plaintiff did not.

Plaintiff does allege that defendant Covello did nothing when advised of the retaliatory actions.  But such conclusory statement, standing alone, is insufficient to state a cognizable civil rights claim against Covello.

Plaintiff's specific allegations as to defendant Covello fail to state a claim as well.  An allegation that Covello did not appropriately acknowledge CDCR rules and policies purportedly endangering the whole institution is conclusory.  While plaintiff claims Covello "came down on plaintiff" fails to provide specific facts demonstrating Covello was personally involved in a specific act or omission that violated plaintiff's constitutional rights.  Absent specific facts tying defendant Covello to an alleged constitutional violation, plaintiff's speculation as to Covello's involvement is insufficient to state a claim.  Moreover, absent any constitutional violation, plaintiff's claim for violation of prison rules, policies or regulations also fails, because there is no independent cause of action for violation of those regulations, rules or policies.  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." Sweaney v. Ada County, 119 F.3d 1385, 1391 (9th Cir.1997), quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996).

Further, plaintiff refers to a conspiracy in his third amended complaint.  Conspiracy is not itself a constitutional tort under section 1983.  Lacey v. Maricopa Cty., 693 F.3d 896, 935 (9th Cir. 2012).  It is typically a means of expanding the pool of liable defendants by demonstrating

their connections to an underlying crime.  Id.  As such, the elements for conspiracy under section 1983 are:  "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement."  Avalos v. Baca, 517 F. Supp. 2d 1156, 1169-70 (C.D. Cal. 2007), aff'd, 596 F.3d 583 (9th Cir. 2010). "There must always be an underlying constitutional violation." Lacey, 693 F.3d at 935.  Because the undersigned finds that the third amended complaint fails to state a claim for retaliation and identifies no other constitutional violation that would support a conspiracy claim, any conspiracy claim fails as well.

Finally, plaintiff's allegation that a dentist placed a transmitter in plaintiff's teeth is not plausible.

The court finds the allegations in plaintiff's third amended complaint fails to state a claim for relief.  Because plaintiff has failed to comply with the requirements of Fed. R. Civ. P. 8(a)(2), as well as prior screening orders, the third amended complaint must be dismissed.

Amendment is Futile

Because plaintiff has been given multiple opportunities to amend, was advised that in order to state a claim he must state facts to show the personal participation of the defendants, and it appears to the Court that further amendment would be futile.  See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009), as amended Feb. 10, 2009 ("where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad."); Hebbe v. Pliler, 627 F.3d 338, 341-42 (9th Cir. 2010) (although pro se pleadings are to be liberally construed, a plaintiff must still present factual allegations sufficient to state a plausible claim for relief).

////

////

Moreover, in the prior screening order, plaintiff was directed to file his amended pleading on the court's form and to include facts supporting each element of his retaliation claim. Plaintiff failed to do so. Thus, the court finds it would be futile to grant plaintiff further leave to amend.

Motion for Injunctive Relief

Plaintiff's Motion

As in his pleadings, plaintiff recites a series of alleged mistreatment since he was transferred to High Desert State Prison in 2015, and then to MCSP in 2016. (ECF No. 31.) In 2021, plaintiff was accused of an IEX, assaulted by a dentist while plaintiff was housed in administrative segregation for which plaintiff is pursuing a medical malpractice suit, alleges Warden Covello had staff target plaintiff, having C/O Brown write plaintiff up four times in six months resulting in plaintiff being placed on C status which obstructed plaintiff's access to the courts. (ECF No. 31 at 1-3.) While on C-status, "a higher authority began to communicate with the inmate population about plaintiff's priva[te] in cell activities showing on tablet" using "shower, in cell, restroom, inmates laughing constantly every time." (ECF No. 31 at 3.) Plaintiff claims this caused him to isolate in his cell. In October of 2021, staff initiated a few inmates to jump plaintiff for a second time the morning of Halloween. In November of 2022, plaintiff transferred to Facility C where the environment was "strange." (ECF No. 31 at 3.) In December of 2022, plaintiff was assaulted by a different dentist Moore who drilled a hole in plaintiff's last upper left tooth and placed a transmitter all the way at the back that allows staff to hear everything plaintiff thinks and says. (ECF No. 31 at 3.) Plaintiff claims prison staff has been sharing all of plaintiff's personal information and everything he did in his cell to the entire prison population. Plaintiff also claims that staff has been tampering with his tablet.

Further, plaintiff claims he has been poisoned since June 15, 2023, for two months straight. He alleges that since December 2022 the IEX's almost disappeared the same month the transmitter was put in his mouth. (ECF No. 31 at 4.)

Plaintiff is doing "terrible," has lost weight, his skin is wrinkling, and his "insides seem to be rotting," and perhaps his colon is infected because he gets a lot of diarrhea. (ECF No. 31 at 5.) He seeks an immediate transfer, perhaps to the "feds." (ECF No. 31 at 6.) He also seeks

7

1    judgment against all named defendants, and asks that defendants Covello, C/O Brown and A.

2    Jenkins show cause in an appropriately scheduled deposition.  (Id.)

3        Governing Law

4        A temporary restraining order preserves the status quo before a preliminary injunction

5    hearing may be held; its provisional remedial nature is designed only to prevent irreparable loss

6    of rights prior to judgment.  Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto

7    Truck Drivers, 415 U.S. 423, 439 (1974).  The standards for both forms of relief are essentially

8    the same.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir.

9    2001) ("Because our analysis is substantially identical for the injunction and the TRO [temporary

10   restraining order], we do not address the TRO separately.").

11       "A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter

12   v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008) (citations omitted); Epona v.

13   Cty. of Ventura, 876 F.3d 1214, 1227 (9th Cir. 2017).  "The sole purpose of a preliminary

14   injunction is to 'preserve the status quo ante litem pending a determination of the action on the

15   merits.'"  Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009) (citing L.A.

16   Memorial Coliseum Comm'n v. NFL, 634 F.2d 1197, 1200 (9th Cir. 1980).)  The party seeking a

17   preliminary injunction must establish that "he is likely to succeed on the merits, that he is likely

18   to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in

19   his favor, and that an injunction is in the public interest."  Winter, 555 U.S. at 20 (citations

20   omitted); Am. Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir.

21   2009); Fed. R. Civ. P. 65 (governing both temporary restraining orders and preliminary

22   injunctions).

23       The propriety of a request for injunctive relief hinges on a significant threat of irreparable

24   injury that must be imminent in nature.  Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668,

25   674 (9th Cir. 1988); see also Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32

26   (9th Cir. 2011).  Speculative injury does not constitute irreparable harm.  See id.; Goldie's

27   Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984).  A presently existing actual

28   threat must be shown, although the injury need not be certain to occur.  Zenith Radio Corp., 395

8

1   U.S. at 130-31; <u>FDIC v. Garner</u>, 125 F.3d 1272, 1279-80 (9th Cir. 1997), <u>cert. denied</u>, 523 U.S.

2   1020 (1998).

3         There is a heightened burden where a plaintiff seeks a mandatory preliminary injunction,

4   which should not be granted "unless the facts and law clearly favor the plaintiff." <u>Comm. of</u>

5   <u>Cent. Am. Refugees v. I.N.S.</u>, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).  Further, in

6   cases brought by prisoners involving conditions of confinement, any preliminary injunction "must

7   be narrowly drawn, extend no further than necessary to correct the harm the court finds requires

8   preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C.

9   § 3626(a)(2).

10        Finally, an injunction against individuals who are not parties to the action is strongly

11   disfavored.  <u>See</u> <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 110 (1969) ("It is

12   elementary that one is not bound by a judgment . . . resulting from litigation in which he is not

13   designated as a party. . . .").

14        <u>Discussion</u>

15        In order to obtain injunctive relief, plaintiff is required to address each element under

16   <u>Winter</u>.  Plaintiff provides no facts demonstrating he is likely to succeed on the merits of this

17   action, that the balance of equities tips in his favor, or that an injunction is in the public interest.

18   Because plaintiff fails to address all of the elements under <u>Winter</u>, his motion should also be

19   denied.

20        Moreover, because the undersigned recommends dismissal of plaintiff's third amended

21   complaint without leave to amend, plaintiff's motion should be denied.  Plaintiff failed to identify

22   a cognizable civil rights claim against defendant Covello.

23        In addition, plaintiff's motion challenges actions taken by unidentified individuals who

24   are not party to this action.  Plaintiff did not name either C/O Brown or A. Jenkins as a defendant

25   in his third amended complaint.  <u>Zenith Radio Corp.</u>, 395 U.S. at 110.

26        For all of the above reasons, the undersigned recommends that plaintiff's motion for

27   injunctive relief be denied.

28   ////

Motion for Counsel

On August 18. 2023, plaintiff filed his fourth request for the appointment of counsel. Plaintiff's previous requests were filed on April 28, 2023, May 18, 2023, and June 5, 2023.  All requests were denied.  In light of those orders, as well as the above recommendations, plaintiff's request (ECF No. 31) is denied.

Motion to Transfer Case

On September 11, 2023, plaintiff filed a motion to transfer this case to the Northern District of New York.  However, plaintiff provided no legal authority supporting such transfer, and points to no facts demonstrating that jurisdiction is proper in the Northern District of New York.  Plaintiff's motion is denied.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for appointment of counsel (ECF No. 31) is denied; and

2.  Plaintiff's motion to transfer this case to the Northern District of New York is denied.

IT IS RECOMMENDED that:

1.  Plaintiff's motion for preliminary injunction (ECF No. 31) be denied;

2.  Plaintiff's third amended complaint be dismissed without leave to amend; and

3.  This action be terminated.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 3, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/sier0488.56+

10